[Cite as *State v. Russell*, 2020-Ohio-3243.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2019-L-138** |
| WAYNE B. RUSSELL, JR., | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2019 CR 000479.

Judgment: Affirmed.


*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Vanessa R. Clapp*, Lake County Public Defender, and *Melissa A. Blake*, Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).



MARY JANE TRAPP, J.

{¶1} Appellant, Wayne Russell Jr. ("Mr. Russell"), appeals the judgment of the Lake County Court of Common Pleas sentencing him to consecutive prison terms of 60 months for one count of gross sexual imposition, a felony of the third degree, and 60 months each for seven counts of sexual battery, felonies of the third degree, for aggregate prison terms of 480 months, following his guilty pleas.

{¶2} Mr. Russell's convictions involve sex offenses with the minor niece of his fiancé over a period of approximately two and a half years when he was in his early 30's and she was 12 through 14 years old.

{¶3} Mr. Russell raises two assignments of error. First, he challenges the trial court's imposition of maximum prison terms for his individual sentences. He argues that his sentences are contrary to law because the trial court was not guided by the third purpose of felony sentencing under R.C. 2929.11(A) involving the promotion of the effective rehabilitation of the offender. He also argues that trial court's "findings" are contrary to law because the trial court improperly relied on elements of his offenses to elevate the seriousness of his conduct under R.C. 2929.12(B).

{¶4} Second, Mr. Russell challenges the trial court's imposition of consecutive sentences. He argues that the trial court's findings under R.C. 2929.14(C)(4) were contrary to law and not supported by the record. He also argues that the trial court's imposition of consecutive sentences demeans the seriousness of other more violent crimes.

{¶5} After a careful review of the record and pertinent law, we find as follows:

{¶6} First, Mr. Russell has not established by clear and convincing evidence that his individual sentences are contrary to law for the following reasons:

{¶7} (a) Since the trial court expressly considered rehabilitation, Mr. Russell has not established that the trial court was not "guided" by the third purpose of felony sentencing or that his prison terms were not reasonably calculated to achieve all three purposes.

{¶8}  (b) R.C. 2929.12(B) requires the trial court to consider factors that may also constitute elements of an offense.

{¶9}  (c) The trial court's determinations under R.C. 2929.12(B)(1) and (6) extended beyond the elements of Mr. Russell's offenses.

{¶10}  (d) Even if the trial court's determinations under R.C. 2929.12(B)(1) and (6) were erroneous, any such error was harmless because the trial court considered other seriousness factors under R.C. 2929.12(B).

{¶11}  Second, Mr. Russell has not established by clear and convincing evidence that the trial court's imposition of consecutive sentences is contrary to law or that the trial court's findings are not supported by the record for the following reasons:

{¶12}  (a) A trial court's finding under R.C. 2929.14(C)(4) that consecutive sentences are not disproportionate to the seriousness of an offender's conduct is not dependent on the trial court's consideration of the seriousness factors under R.C. 2929.12(B), and we find no error in the trial court's consideration of the seriousness factors under R.C. 2929.12(B).

{¶13}  (b) The trial court's finding under R.C. 2929.14(C)(4) that consecutive sentences are not disproportionate to the danger Mr. Russell poses to the public is supported by the record.

{¶14}  (c) R.C. 2929.14(C)(4)(b) does not require a trial court to find that consecutive sentences do not demean the seriousness of other more violent crimes, and this case is factually distinguishable from those in which consecutive sentences were reversed.

{¶15} (d) Even if the trial court's finding under R.C. 2929.14(C)(4)(b) was erroneous, any such error was harmless since the trial court also made a finding under R.C. 2929.14(C)(4)(c) that is supported by the record.

{¶16} Thus, we affirm the judgment of the Lake County Court of Common Pleas.

**Substantive and Procedural History**

{¶17} In July 2019, the Lake County Grand Jury indicted Mr. Russell on 23 counts, consisting of three counts of gross sexual imposition, felonies of the third degree, in violation of R.C. 2907.05(A)(4) (Counts 1, 2, and 3), ten counts of unlawful sexual conduct with a minor, felonies of the third degree, in violation of R.C. 2907.04(A)(4) (Count 4, 6, 8, 10, 12, 14, 16, 18, 20, and 22), and ten counts of sexual battery, felonies of the third degree, in violation of R.C. 2907.03(A)(5) (Counts 5, 7, 9, 11, 13, 15, 17, 19, 21, and 23). Mr. Russell initially entered pleas of not guilty to the charges.

{¶18} The charges allege that Mr. Russell engaged in sexual contact or conduct with the minor niece of his fiancé on several occasions beginning in June 2014 through March 2019.

{¶19} At a plea hearing, Mr. Russell withdrew his former pleas of not guilty and entered written and oral pleas of guilty to one count of gross sexual imposition (Count 3), relating to the time period from June 2016 through June 2017 when the victim was 12 years old, and seven counts of sexual battery (Counts 5, 7, 11, 15, 19, 21, and 23), relating to the time period from April 2018 through March 2019 when the victim was 13 and 14 years old.

4

{¶20} Following a plea colloquy, the trial court accepted Mr. Russell's guilty pleas and found him guilty. It referred the matter for a presentence investigation and victim impact statement and scheduled the matter for sentencing.

### The Sentencing Hearing

{¶21} At the sentencing hearing, Mr. Russell's attorney indicated that Mr. Russell recognized that he engaged in inappropriate conduct and that a prison sentence is an appropriate consequence. She asked the trial court to impose concurrent prison terms of 24 months on each count for a total prison term of two years.

{¶22} Mr. Russell spoke on his own behalf and apologized for his actions. The trial court then engaged Mr. Russell in a colloquy regarding the factual bases of his current offenses and his prior juvenile adjudications, including rape and gross sexual imposition involving his four- or five-year-old adopted brother.

{¶23} The victim addressed the court, as did her mother and aunt.

{¶24} The state requested a lengthy prison term based on Mr. Russell's position of power and trust as an "uncle figure" to the victim, his history of sex offenses, and his lack of genuine remorse.

{¶25} In imposing Mr. Russell's sentence, the trial court engaged in a lengthy discussion of its reasoning. As to the purposes and principles of felony sentencing set forth in R.C. 2929.11, the trial court stated as follows:

{¶26} "I've considered the applicable statutes, that being 2929.11 regarding the purposes and principles of felony sentencing, the overriding purpose being to punish the offender and protect the public from future crime by the offender and others using the minimum sanction that I determine accomplishes these purposes. I considered the need

5

for incapacitation, deterrence and rehabilitation and the sentence will be commensurate with and not demeaning to the serious[ness] of the offender's conduct and the impact on the victim and consistent * * * with sentences for similar crimes by similar offenders. Its [sic] not based on the defendant's race, ethnicity, gender or religion."

{¶27} The trial court also stated that it reviewed the presentence report, the victim impact statements, and the comments from those who addressed the court and that it considered the seriousness and recidivism factors set forth in R.C. 2929.12.

{¶28} As to the seriousness factors under R.C. 2929.12(B), the trial court found that (1) the victim suffered serious psychological harm; (2) the injury was exacerbated by the age of the victim; (3) Mr. Russell's relationship to the victim facilitated the offense; and (4) Mr. Russell indicated that he knew his conduct was wrong but continuously engaged in it. The trial court found no factors under R.C. 2929.12(C) indicating Mr. Russell's conduct was less serious.

{¶29} As to recidivism factors under R.C. 2929.12(D), the trial court found (1) a history of criminal convictions, including assault in 2003, theft in 2006; (2) an adjudication of rape and gross sexual imposition in 2001; (3) Mr. Russell had not responded favorably to time spend in the Department of Youth Services for the latter adjudication; and (4) Mr. Russell had no genuine remorse. The trial court found no factors under R.C. 2929.12(E) indicating recidivism was less likely.

{¶30} The trial court ultimately sentenced Mr. Russel to a prison term of 60 months for gross sexual imposition (Count 3) and prison terms of 60 months each for the seven counts of sexual battery (Counts 5, 7, 11, 15, 19, 21, and 23), all to be served

6

consecutively, for prison terms totaling 480 months. As to its imposition of consecutive sentences, the trial court stated as follows:

{¶31} "And I find that consecutive sentences are necessary to protect the public from future crime by you and to punish you and they are not disproportionate to the seriousness of your conduct and to the danger you pose to the public because obviously you're engaging in this conduct, you don't care what [e]ffect it has or you can't stop engaging in this conduct. Either way you pose an extreme danger to the public.

{¶32} "And I find that at least two of these offenses are committed as part of one or more courses of conduct and the harm caused by at least two of the offenses was so great or unusual that no single prison term for any of these offenses committed as part of this conduct adequately reflects the seriousness of your conduct. You've got a history of criminal conduct as I indicate that demonstrates that a consecutive sentence is necessary to protect the public from future crime by you."

### The Appealed Judgment Entry

{¶33} The trial court subsequently issued a sentencing entry memorializing Mr. Russell's guilty pleas and sentences. The trial court's sentencing entry states, in relevant part, as follows:

{¶34} "The Court has also considered the record, oral statements, any victim impact statement, pre-sentence report and/or drug and alcohol evaluation submitted by the Lake County Adult Probation Department of the Court of Common Pleas, as well as the principles and purposes of sentencing under R.C. 2929.11, as has balanced the seriousness and recidivism factors under R.C. 2929.12.

7

{¶35} "In considering the foregoing, and for the reasons stated on the record, this Court finds that a prison sentence is consistent with the purposes and principles of sentencing set forth in R.C. 2929.11 and that Defendant is not amenable to an available community control sanction."

{¶36} With respect to the imposition of consecutive sentences, the trial court court's sentencing entry states:

{¶37} "Pursuant to R.C. 2929.14(C)(4) and R.C. 2929.19(B)(2)(b), the Court finds for the reasons stated on the record that consecutive sentences are necessary to protect the public from future crime or to punish the Defendant and are not disproportionate to the Defendant's conduct and the danger the Defendant poses to the public; and that at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses committed by the Defendant was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the Defendant's conduct; and the Defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the Defendant."

{¶38} Mr. Russell timely appealed and raises the following two assignments of error for our review:

{¶39} "[1.] The trial court erred by sentencing the defendant-appellant to individual, maximum prison terms of 60 months on each count, as the trial court's findings with respect to R.C. 2929.11 and 2929.12 were unsupported by the record and thus, contrary to law.

8

{¶40} "[2.] The trial court erred by sentencing the defendant-appellant to serve the individual, maximum prison terms consecutively when the consecutive sentences were unsupported by the record and thus, contrary to law."

## Individual Felony Sentences

{¶41} In his first assignment of error, he challenges the trial court's imposition of maximum prison terms for his individual felony sentences.

### *Standard of Review*

{¶42} The standard of review for individual felony sentences is governed by R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶16. That provision states:

{¶43} "The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

{¶44} "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard of review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

{¶45} "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

{¶46} "(b) That the sentence is otherwise contrary to law."

{¶47} A sentence is contrary to law if "(1) the sentence falls outside the statutory range for the particular degree of offense, or (2) the trial court failed to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors in R.C. 2929.12." (Citations omitted.) *State v. Wilson*, 11th Dist. Lake No. 2017-L-028, 2017-Ohio-7127, ¶18.

{¶48} Appellate courts "may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence." *Marcum* at ¶23.

{¶49} Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. *Marcum* at ¶22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶50} We have recognized that the "clear and convincing standard" is "highly "deferential, as it "is written in the negative. It does not say that the trial judge must have clear and convincing evidence to support its findings. Instead, it is the court of appeals that must clearly and convincingly find that the record does not support the court's findings." *State v. Taeusch*, 11th Dist. Lake No. 2016-L-047, 2017-Ohio-1105, ¶13, quoting *State v. Venes*, 8th Dist. Cuyahoga No. 98682, 2013-Ohio-1891, ¶21.

### R.C. 2929.11(A)

{¶51} Within his first assignment of error, Mr. Russell argues that his individual felony sentences are contrary to law because the trial court "failed to be guided by" the

10

third overriding purpose of felony sentencing set forth in R.C. 2929.11(A), which is "to promote the effective rehabilitation of the offender."

{¶52} R.C. 2929.11 applies as a general judicial guide for every sentencing. *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, ¶36. R.C. 2929.11(A) states that the court "shall be guided by the overriding purposes of felony sentencing," which are "[1] to protect the public from future crime by the offender and others, [2] to punish the offender, and [3] to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." The Ohio General Assembly added the third purpose pursuant to S.B. 66, which became effective on October 29, 2018, prior to Mr. Russell's sentencing hearing held on October 3, 2019. *See* 2929.11.

{¶53} To "achieve those purposes," the trial court "shall consider the need for [1] incapacitating the offender, [2] deterring the offender and others from future crime, [3] rehabilitating the offender, and [4] making restitution to the victim of the offense, the public, or both." R.C. 2929.11(A).

{¶54} A felony sentence "shall be reasonably calculated to achieve the three overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

### *Rehabilitation*

{¶55} Mr. Russell contends that the trial court's failure to acknowledge the third purpose of felony sentencing constitutes clear and convincing evidence that the trial court

11

failed to be guided by all three purposes and that the prison terms were not reasonably calculated to achieve all three purposes. We do not agree.

{¶56} We have previously held that a trial court's nearly identical comments do not clearly and convincingly demonstrate that the trial court was not "guided" by the third purpose of sentencing. *See State v. Anthony*, 11th Dist. Lake No. 2019-L-045, 2019-Ohio-5410, ¶78, *appeal not accepted*, 158 Ohio St.3d 1467, 2020-Ohio-1393. As in *Anthony*, the trial court expressly stated at the sentencing hearing that it considered rehabilitation. *Id.*; *see also State v. Banas*, 11th Dist. Lake No. 2019-L-049, 2019-Ohio-5053, ¶14 (holding that the trial court met its statutory obligations under R.C. 2929.11(A) by specifically stating it considered the need for rehabilitation).

{¶57} Further, the trial court's reference to rehabilitation as a "principle" rather than a "purpose" does not mean it was not guided by rehabilitation or that Mr. Russell's sentence was not reasonably calculated to achieve the "purpose" of rehabilitation. A trial court is not required to use specific language to demonstrate its consideration of R.C. 2929.11. *State v. DiBell*, 11th Dist. Ashtabula Nos. 2019-A-0052, et al., 2020-Ohio-734 at ¶13.

{¶58} Mr. Russell acknowledges that the sentencing entry indicates the trial court considered all three purposes of felony sentencing. He also acknowledges our holding in *Anthony* that the inclusion of language in a sentencing entry affirmatively stating that the court considered the purposes of sentencing set forth in R.C. 2929.11 defeats a claim that the trial court failed to consider those statutory guidelines. *See id.* at ¶79, citing *State v. Frederick*, 10th Dist. Franklin No. 13AP-630, 2014-Ohio-1960, ¶14. Nevertheless, Mr.

12

Russell argues that the "inclusion of standard language in a judgment entry" does not overcome the trial court's "own expressed explanation" at the sentencing hearing.

{¶59} Mr. Russell cites no authority for this proposition, and the case law supports the opposite conclusion. It is well-established that a trial court only speaks through its judgment entries. *Hairston v. Seidner*, 88 Ohio St.3d 57, 58 (2000). If the journal entry and the judge's comments conflict, the journal entry controls. *State v. Shepherd*, 3d Dist. Hardin No. 6-08-16, 2009-Ohio-3315, ¶6.

{¶60} Mr. Russell's argument implies that the trial court's imposition of maximum sentences means it did not consider rehabilitation. However, "the trial court possesses broad discretion to determine the most effective way to comply with the purposes and principles of sentencing within the statutory guidelines." *State v. Price*, 11th Dist. Geauga No. 2007-G-2785, 2008-Ohio-1134, ¶31; R.C. 2929.12(A).

{¶61} Further, as we recognized in *Anthony*, incarceration is not inconsistent with rehabilitation. *Id.* at ¶85, citing *State v. Barrett*, 8th Dist. Cuyahoga No. 97614, 2012-Ohio-3948, ¶31. A trial court cannot "require" rehabilitation. *Id.*, citing *State v. Gilmer*, 6th Dist. Ottawa No. OT-05-028, 2005-Ohio-6435, ¶7. It is up to a defendant to acknowledge that he needs to rehabilitate himself and take advantage of opportunities that might steer him in that direction. *Id.* Rehabilitation is a goal Mr. Russell may work toward while serving his sentences.

{¶62} Accordingly, Mr. Russell has not established by clear and convincing evidence that the trial court was not guided by the purpose of rehabilitation in imposing his felony sentences or that his prison terms were not reasonably calculated to achieve all three purposes.

## R.C. 2929.12(B)

{¶63} Within his first assignment of error, Mr. Russell challenges the trial court's determinations under R.C. 2929.12(B).

{¶64} Along with R.C. 2929.11, R.C. 2929.12 also applies as a general judicial guide for every sentencing. *Foster* at ¶36. R.C. 2929.12 grants the sentencing judge discretion "to determine the most effective way to comply with the purposes and principles of sentencing." R.C. 2929.12(A). In exercising that discretion, the court shall consider, along with any other "relevant" factors, the seriousness factors set forth in divisions (B) and (C) and the recidivism factors in divisions (D) and (E) of R.C. 2929.12. *Id.* These statutory sections provide a nonexclusive list for the court to consider. *Foster* at ¶37.

{¶65} R.C. 2929.12(B) provides, in relevant part, that "[t]he sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense:

{¶66} "(1) The * * * mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the * * * age of the victim.

{¶67} "* * *

{¶68} "(6) The offender's relationship with the victim facilitated the offense."

### Element of the Offense

{¶69} Mr. Russell contends that the trial court "improperly considered" the victim's age under R.C. 2929.12(B)(1) and his relationship to the victim under R.C. 2929.12(B)(6) to elevate the seriousness of his conduct because these are elements of his offenses. Therefore, he argues the trial court's "findings" are contrary to law.

14

{¶70} Specifically, Mr. Russell pleaded guilty to one count of gross sexual imposition under R.C. 2907.05(A)(4), a necessary element of which is that the victim is less than 13 years of age. In addition, Mr. Russell pleaded guilty to seven counts of sexual battery under R.C. 2907.03(A)(5), a necessary element of which is that Mr. Russell was "in loco parentis" of the victim.

{¶71} We first note that the relevant inquiry is not whether the trial court's "findings" are contrary to law but instead whether the "sentence" is "contrary to law." *See* R.C. 2953.08(G)(2). As previously indicated, a sentence is only contrary to law if (1) the sentence falls outside the statutory range for the particular degree of offense, or (2) the trial court failed to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors in R.C. 2929.12. *Wilson* at ¶18.

{¶72} Mr. Russell does not argue that his sentences fall outside the statutory ranges or that the trial court failed to consider the sentencing factors in R.C. 2929.12. Instead, Mr. Russell argues that the trial court was not *permitted* to consider the sentencing factors in R.C. 2929.12(B)(1) and (6) because they are also elements of his offenses. We find this argument to be without merit.

### *"Element of the Offense" Case Law*

{¶73} This court has previously acknowledged the case law holding that a trial court may not rely on an element of an offense to enhance the seriousness of an offender's conduct. *See, e.g.*, *State v. Polizzi*, 11th Dist. Lake Nos. 2018-L-063 & 2018-L-064, 2019-Ohio-2505, ¶28, *appeal not accepted*, 157 Ohio St.3d 1442, 2019-Ohio-4211, quoting *State v. Sims*, 4th Dist. Gallia No. 10CA17, 2012-Ohio-238, ¶16; *State v.*

15

*Martin*, 11th Dist. Lake No. 2018-L-060, 2019-Ohio-2504, ¶26; *State v. McBee*, 11th Dist. Geauga No. 2017-G-0149, 2019-Ohio-2967, ¶30; *Anthony* at ¶90.

{¶74} In *Polizzi*, the defendant was convicted of two counts of gross sexual imposition and six counts of sexual battery. *Id.* at ¶6. The defendant was a teacher to the victims, which was a necessary element of his six sexual battery convictions under R.C. 2907.03(A)(7). *Id.* at ¶28. We stated the relationship between the offender and victim had been "accounted for by the legislature when it established most of these offenses [R.C. 2907.03] as felonies of the third degree." *Id.* We concluded there was no support "for some of the findings the trial court made to justify imposition of consecutive sentences" and that the defendant's "sentences for sexual battery should not be elevated based on his status as a teacher to the victims." *Id.* at ¶47.

{¶75} As we have recently recognized, however, the holding in *Polizzi* was that the trial court's consecutive sentence findings under R.C. 2929.14(C)(4) were clearly and convincingly not supported by the record. *Banas*, *supra*, at ¶25. Thus, we declined to apply *Polizzi* to a trial court's seriousness determinations under R.C. 2929.12. *See id.*

{¶76} In the other cases in which we acknowledged the "element of the offense" case law, we determined that it was not applicable to the facts presented. *See Martin* at ¶26; *McBee*, at ¶31-40; *Anthony* at ¶93-104.

{¶77} However, a review of the "element of the offense" cases indicates they were based on prior versions of the sentencing statutes which the Supreme Court of Ohio found unconstitutional in *Foster*.

{¶78} For instance, former R.C. 2929.14(B) created a statutory presumption in favor of the shortest prison term authorized for the offense for an offender who had not

16

previously served a prison term unless the court found on the record that the shortest prison term would demean the seriousness of the offender's conduct or will not adequately protect the public from future crime. Some appellate courts held that the record did not clearly and convincingly support the trial court's finding that a minimum sentence would seriously demean the seriousness of the defendant's conduct where the defendant's conduct was a required element of the charged offense. *See, e.g., State v. Jones*, 10th Dist. Franklin No. 01AP-1183, 2002-Ohio-3725, ¶18; *State v. Schlecht*, 2d Champaign No. 2003-CA-3, 2003-Ohio-5336, ¶54; *State v. Smith*, 8th Dist. Cuyahoga No. 85245, 2005-Ohio-3836, ¶17.

{¶79} In addition, former R.C. 2929.14(C)(1) only authorized a trial court to impose the maximum sentence upon offenders who had committed the worst forms of the offense. Under former R.C. 2929.19(B)(2)(d) and (e), the trial court was required to make certain findings that gave its reasons for selecting the sentence imposed. Some appellate courts found that a defendant could not be held to have committed the worst forms of the offenses by pointing to factors that describe the offenses themselves. *See, e.g., State v. DeAmiches*, 8th Dist. Cuyahoga No. 77609, 2001 WL 210020, *8 (Mar. 1, 2001); *State v. Wilson*, 5th Dist. Coshocton No. 02CA030, 2004-Ohio-1692, ¶17; *State v. Clagg*, 4th Dist. Washington No. 04CA30, 2005-Ohio-4992, ¶26.

{¶80} In *Foster*, the Supreme Court of Ohio held that trial courts "are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences. *Id.* at paragraph seven of the syllabus. However, appellate courts cited the "element of the offense" case law in relation to a trial court's consideration of R.C. 2929.12(B) without recognizing that the basis of those decisions

17

was no longer applicable. *See, e.g., State v. Stroud*, 7th Dist. Mahoning No. 07 MA 91, 2008-Ohio-3187, ¶48-52; *State v. Davis*, 4th Dist. Washington No. 09CA28, 2010-Ohio-555, ¶24-25; *Sims, supra*, at ¶16-19.

{¶81} The statutory text of R.C. 2929.12(B) does not support a conclusion that a trial court may not recognize an element of an offense in its consideration of the seriousness of an offender's conduct. R.C. 2929.12(B) states that the trial court "shall consider all" of the factors "that apply regarding the offender, the offense, or the victim." Thus, the trial court is *required* to consider them. *See* Katz, Martin, & Macke, *Baldwin's Ohio Practice Criminal Law*, Section 116:6 (3d Ed.2019) ("The elimination of the discretionary language that introduced the seriousness factors in the old law indicates that when one or more of the enumerated factors are present, a sentencing court must recognize the offense to be more serious and take that into consideration when imposing a sentence"). The factors of R.C. 2929.12(B) evaluate the seriousness of an offender's conduct, not the elements of the offense. *State v. Tarr*, 6th Dist. Ottawa No. OT-03-010, 2004-Ohio-216, ¶10; *see State v. Liming*, 2d Dist. Greene No. 03CA43, 2004-Ohio-168, ¶22 (finding no inherent conflict between the elements of an offense and the sentencing considerations under R.C. 2929.12(B)).

{¶82} The statutory text contains no exception for factors that may overlap with the elements of an offense. By analogy, federal circuits have held that so-called "double counting" raises no constitutional concerns but is strictly a matter of guidelines interpretation. *See United States v. Vizcarra*, 668 F.3d 516, 519 (7th Cir.2012). Therefore, federal circuit courts have held that conduct that forms the factual basis for an element of the offense may also be used to support an enhancement or adjustment under

18

the federal sentencing guidelines unless the text of the applicable guideline instructs otherwise. *See id.* at 525 (collecting cases).

{¶83} We recognize that in many instances, an element of an offense cannot make an offender's conduct more serious than conduct normally constituting the offense. However, R.C. 2929.12(B) requires the trial court to consider the applicable factors "*as indicating* that the offender's conduct *is* more serious than conduct normally constituting the offense." (Emphasis added.) The statute does not require the trial court to determine *whether* the offender's conduct is more serious than conduct normally constituting the offense. Therefore, in those instances where there is overlap, the same seriousness factor will apply in every case involving that particular offense. *See Liming* at ¶23 (holding that the "serious physical harm" factor under R.C. 2929.12(B)(1) will apply in every case of aggravated vehicular homicide).

{¶84} According to the Second District, this "uniform application neutralizes the matter, so as to make any one instance of [the applicable offense] no more or less serious than any others founded on the same statutory grounds. In other words, every person who is found guilty of committing the offense is subject to a like result, at least with reference to the same finding of seriousness." *Id.*

{¶85} Plus, the Supreme Court of Ohio has made clear that "there is no mandate for judicial fact-finding" in R.C. 2929.12. *Foster* at ¶42. The trial court is merely to "consider" the statutory factors. *Id.* It is not required to give any particular weight or consideration to any sentencing factor. *State v. Holin*, 174 Ohio App.3d 1, 2007-Ohio-6255, ¶34 (11th Dist.). It is not even required to discuss the statutory criteria on the record or state on the record that it considered them. *See State v. Jarvi*, 11th Dist. Ashtabula

19

No. 2013-A-0037, 2014-Ohio-1774, ¶14; *State v. Adams*, 37 Ohio St.3d 295 (1988), paragraph three of the syllabus ("A silent record raises the presumption that a trial court considered the factors contained in R.C. 2929.12"). Rather, the court's consideration of the statutory factors relates to it exercise of discretion in determining the most effective way to comply with the purposes and principles of sentencing. *See* R.C. 2929.12(A).

{¶86} To the extent the trial court makes R.C. 2929.12 determinations on the record, and if the sentence is not clearly and convincingly contrary to law, i.e., the trial court duly considered the appropriate sentencing factors and imposed a sentence within the statutory range, then the appellate court must find "by clear and convincing evidence that the record does not support the sentence." *Holin* at ¶34; *Marcum* at ¶23.

### R.C. 2929.12(B) Analysis

{¶87} In the present case, Mr. Russell's sentences fall within the statutory ranges. The trial court expressly considered the applicable sentencing factors under R.C. 2929.12(B) that it was statutorily required to consider. Thus, his sentences are not contrary to law. Mr. Russell does not argue that the trial court's determinations under R.C. 2929.12(B) are not supported by the record. Therefore, we find no error.

{¶88} Further, we find that the present case is distinguishable from the "element of the offense" cases.

{¶89} The offense of gross sexual imposition under R.C. 2907.05(A)(4) involves sexual contact with another who is not the offender's spouse and who is less than 13 years of age. At the sentencing hearing, the trial court found that under R.C. 2929.12(B)(1) the victim's serious psychological harm was exacerbated by her age, noting that Mr. Russell began victimizing her when she was 10 years old. The statute

only requires an objective fact – whether victim was under 13 years of age. It does not address whether the victim sustain harm or whether the victim's age exacerbated that harm. Therefore, the trial court's determination under R.C. 2929.12(B)(1) extended beyond the age element of gross sexual imposition under R.C. 2907.05(A)(4).

{¶90} In addition, the offense of sexual battery under R.C. 2907.03(A)(5) includes a person in "in loco parentis" with the victim. To meet the definition of "loco parentis," a person must "assume a dominant parental role and be relied upon by the child for support." *State v. Noggle*, 67 Ohio St.3d 31 (1993), paragraph one of the syllabus.

{¶91} At the sentencing hearing, the trial court stated that Mr. Russell's relationship with the victim facilitated the offense under R.C. 2929.12(B)(6). Specifically, the trial court found that Mr. Russell "ingratiated" himself into the family by becoming involved in a relationship with the victim's aunt and quickly taking advantage of the victim.

{¶92} The application of R.C. 2929.12(B)(6) requires that the offender's relationship to the victim make the commission of the offense easier. *State v. Tate*, 11th Dist. Lake No. 2015-L-038, 2016-Ohio-8421, ¶31. R.C. 2907.03(A)(5) only requires the existence of a parental role and does not address how that role facilitated the offense. Thus, the trial court's determination under R.C. 2929.12(B)(1) extended beyond the "in loco parentis" element of sexual battery under R.C. 2907.03(A)(5).

{¶93} In addition, the trial court did not expressly base its R.C. 2929.12(B) determinations on any of Mr. Russell's offenses. The victim's age is not an element of sexual battery under R.C. 2907.03(A)(5), and the offender's relationship to the victim is not an element of gross sexual imposition under R.C. 2907.05(A)(4). Thus, it was not improper for the trial court to consider these factors. *See Banas, supra*, at ¶25 (holding

21

that it was not improper to the trial court to consider the offender's relationship with the victim as a factor that made the defendant's rape offense more serious).

{¶94} Finally, even if the trial court improperly considered elements of the offense under R.C. 2929.12(B), any such error was harmless. Courts have limited the "element of the offense" case law to situations in which the *only* factor supporting a maximum sentence is a factor that is also an element of the offense. *See State v. Hardin-Moore*, 2d Dist. Montgomery No. 24237, 2011-Ohio-4666, ¶22. Here, the trial court also found that Mr. Russell's conduct was more serious because the victim suffered serious psychological harm and because Mr. Russell indicated that he knew his conduct was wrong but continuously engaged in it. Mr. Russell has not challenged these findings on appeal. *See McBee* at ¶52 (finding that the trial court's "serious physical harm" finding was harmless error because other factors indicated the defendant's conduct was more serious).

{¶95} In sum, Mr. Russell has not established by clear and convincing evidence that his individual felony sentences are contrary to law.

{¶96} Mr. Russell's first assignment of error is without merit.

### Consecutive Felony Sentences

{¶97} In his second assignment of error, Mr. Russell challenges the trial court's imposition of consecutive prison terms for his multiple felony offenses.

### *Standard of Review*

{¶98} The standard of review for the imposition of consecutive prison terms is governed by the clearly and convincingly standard set forth in R.C. 2953.08(G)(2). *See State v. Gwynne*, 158 Ohio St.3d 279, 2019-Ohio-4761, ¶16.

22

{¶99} R.C. 2929.41(A) provides, in pertinent part: "Except as provided in * * * division (C) of section 2929.14, * * * a prison term, * * * or sentence of imprisonment shall be served concurrently with any other prison term, * * * or sentence of imprisonment imposed by a court of this state * * *."

{¶100} Pursuant to R.C. 2929.14(C)(4), a trial court may order multiple prison terms for convictions of multiple offenses to be served consecutively if the court finds that "consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public * * *." The trial court must also find that one of the following statutory factors applies:

{¶101} "(a) The offender committed one or more of the multiples offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

{¶102} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

{¶103} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

{¶104} "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry * * *." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶37. Otherwise, the imposition of consecutive sentences is contrary to law. *See id.* The trial court is not required "to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Id.*

### Disproportionality - Seriousness of Conduct

{¶105} Mr. Russell argues that since the trial court's findings under R.C. 2929.12(B) are "erroneous," its finding under R.C. 2929.14(C)(4) that consecutive sentences are not disproportionate to the seriousness his conduct is also "erroneous."

{¶106} It appears Mr. Russell is arguing that his consecutive sentences are contrary to law. However, the Supreme Court of Ohio has held that consecutive sentences are contrary to law if the trial court does not make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry. *Bonnell* at ¶37. Here, the trial court made findings under R.C. 2929.14(C)(4), (C)(4)(b), and (C)(4)(c) at both the sentencing hearing and the judgment entry.

{¶107} Mr. Russell cites no authority holding that a trial court's finding under R.C. 2929.14(C)(4) that consecutive sentences are not disproportionate to the seriousness of an offender's conduct is dependent on the trial court's consideration of the seriousness factors under R.C. 2929.12(B). In fact, a plurality of the Supreme Court of Ohio has held that appellate courts may not review consecutive sentences for compliance with R.C.

2929.11 and R.C. 2929.12. *See Gwynne* at ¶18. In any event, as discussed above, we find no error in the trial court's consideration of the seriousness factors under R.C. 2929.12(B).

{¶108} Accordingly, Mr. Russell has not established that the trial court's finding that consecutive sentences are not disproportionate to the seriousness of his conduct is contrary to law.

### Disproportionality - Danger to the Public

{¶109} Mr. Russell argues that trial court's finding that consecutive sentences are not disproportionate to the danger he poses to the public is not supported by the record and "as such, is contrary to law."

{¶110} We note that whether a trial court's finding under R.C. 2929.14(C) and whether consecutive sentences are contrary to law are two separate concepts. *See* R.C. 2953.08(G)(2)(a) and (b). Mr. Russell is actually arguing that this finding is not supported by the record.

{¶111} According the Supreme Court of Ohio, "the record must contain a basis upon which a reviewing court can determine that the trial court made the findings required by R.C. 2929.14(C)(4) before it imposed consecutive sentences." *Bonnell* at ¶28. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.* at ¶29.

{¶112} Mr. Russell contends the trial court found Mr. Russell was a danger to the public based on his criminal history. According to Mr. Russell, he is not a danger to the public based on his adult criminal history.

25

{¶113} With respect to Mr. Russell's danger to the public, the trial court stated "obviously you're engaging in this conduct, you don't care what affect it has or you can't stop engaging in this conduct. Either way you pose an extreme danger to the public." Thus, trial court's finding is referencing Mr. Russell's history of engaging in sexual conduct with minors, not his adult criminal history.

{¶114} Mr. Russell may be referencing the trial court's additional statement: "You've got a history of criminal conduct as I indicate that demonstrates that a consecutive sentence is necessary to protect the public from future crime by you." Despite similar language, this statement constitutes an additional finding under R.C. 2929.14(C)(4)(c), not one of the threshold findings within R.C. 2929.14(C)(4). *See State v. Brown*, 11th Dist. Ashtabula No. 2016-A-0021, 2017-Ohio-9259, ¶81 (noting that R.C. 2929.14(C)(4) requires "two somewhat redundant findings").

{¶115} Evidence in the record supports the trial court's finding regarding Mr. Russell's danger to the public. The record reflects that Mr. Russell was adjudicated for rape and gross sexual imposition involving his 4 or 5-year old adopted brother for which he spent time in the Department of Youth Services. His conduct involving the victim spanned several years, beginning when she was 10 years old and ending a few months prior to his indictment.

{¶116} After committing the charged offenses, Mr. Russell engaged in sexual conduct with the victim's 16-year-old sister. A defendant's uncharged yet undisputed conduct may be considered in sentencing without resulting in error when it is not the sole basis for the sentence. *State v. Cooper*, 8th Dist. Cuyahoga No. 93308, 2010-Ohio-1983, ¶15.

26

{¶117} In his presentence report, Mr. Russell demonstrated concern with the impact of his offenses on himself but not on the victim. And at sentencing, Mr. Russell indicated that he knew his actions were wrong but did them anyway.

{¶118} Thus, evidence in the record supports the trial court's finding regarding Mr. Russell's danger to the public.

### Demeaning the Seriousness of Violent Crimes

{¶119} Finally, Mr. Russell argues that the trial court's imposition of consecutive sentences demeans the seriousness of other more violent crimes.

{¶120} Mr. Russell cites to *State v. Overholser*, 2d Dist. Clark No. 2014-CA-42, 2015-Ohio-1980, where the Second District reversed the defendant's consecutive sentences totaling 20 years on five counts of gross sexual imposition. *Id.* at ¶1, 33. The trial court determined that the record did not support that trial court's finding under R.C. 2929.14(C)(4)(b) that at least two of the offenses were committed as part of one course of conduct and that the harm caused by two or more of the offenses was so great or unusual that no single prison term adequately reflects the seriousness of the defendant's conduct. *Id.* at ¶32. Among other things, the court noted that sentence of 20 years "may in fact demean the seriousness of other more violent crimes and the harm to other victims; for example, rape is a felony of the first degree and has a maximum sentence of 11 years, and a sentence for murder is 15 years to life." *Id.* at ¶32.

{¶121} Mr. Russell also cites to this court's decision in *Polizzi*, where we reversed consecutive sentences totaling 33 years on six counts of sexual battery based, in part, on our determination that the sentence "would demean the seriousness of other more violent crimes." *Id.* at ¶36, citing *Overholser* at ¶32.

27

{¶122} Notably, the *Overholser* court did not cite any authority for its holding. It may originate from the court's own decision in *State v. Adams*, 2d Dist. Clark No. 2014-CA-13, 2015-Ohio-1160, where it reversed consecutive sentences totaling 20 years for three counts of burglary and one count of heroin possession because the offenses "do not reflect such seriousness and a danger to the public that 20 years in prison is necessary to protect the public from him." *Id*. at ¶29. The court found that such a sentence "may demean the perceived seriousness of other crimes and the harm to other victims; for example, the sentence for murder is 15 to life and rape has a maximum sentence of 11 years." *Id*.

{¶123} Regardless of its origins, the *Overholser* holding is not supported by the statutory text of R.C. 2929.14(C)(4)(b). This provision is very specific regarding the required components of the trial court's finding: (1) "one or more courses of conduct," and (2) "great or unusual" harm so that no single prison sentence adequately reflects the seriousness of the offender's conduct.

{¶124} The Supreme Court has held in another setting that in order to find that two offenses were part of a single course of conduct, a trial court "must * * * discern some connection, common scheme, or some pattern or psychological thread that ties [the offenses] together." (Citation omitted.) *State v. Sapp*, 105 Ohio St.3d 104, 2004-Ohio-7008, syllabus. It may be established by factual links, including time, location, weapon, cause of death, or similar motivation. *Id.* at ¶52. In addition, the court may consider information beyond that strictly related to the offenses of which a defendant is convicted. *State v. Smith*, 2d Dist. Montgomery No. 28265, 2019-Ohio-5015, ¶71.

{¶125} Under the plain language of R.C. 2929.149(C)(4)(b), the "so great or unusual" factor does not apply to the conduct of the defendant but rather to the harm caused by such conduct. *Smith* at ¶76.

{¶126} Thus, there is no language requiring the trial court to also find that consecutive sentences would not demean the seriousness of more violent crimes. The provision does not reference other offenders, nor does it require the trial court to distinguish between violent or non-violent offenses or between physical and psychological harm.

### *R.C. 2929.14(C)(4)(b) Analysis*

{¶127} In addition to the problematic legal basis of *Overholser*, the facts of this case, as demonstrated in the record, are distinguishable.

{¶128} In *Overholser*, the defendant pleaded guilty to five counts of gross sexual imposition involving a male victim who was 11 years old at the time of the offenses involving a time period of approximately four months. *Id*. at ¶1-2, 4. The trial court sentenced him to consecutive sentences of four years in prison on each count, for an aggregate prison term of 20 years. *Id*. at ¶1.

{¶129} The Second District noted that the defendant was 21 years old at the time offenses, had led a lawful life prior to the offenses, had not been adjudicated a delinquent child, had no adult criminal history, had been an outstanding high school student, and had been consistently employed. *Id*. at ¶29. His risk of recidivism was low in all categories. *Id*. at ¶30. The defendant apologized to "every single person" that he had affected by his poor choices, acknowledged he had "hurt somebody," and expressed regret and shame. *Id*. at ¶31.

{¶130} In reviewing the trial court's finding under R.C. 2929.14(C)(4)(b), the Second District distinguished the level of harm found in a prior case involving "three dozen explicit sex acts," as well as "subjecting a twelve-year-old child to a rape exam, causing her to experience time in jail, and causing her to suffer ridicule and ostracization from her peers." *Id.* at ¶32, citing *State v. Hawkins*, 2d Dist. Greene No. 2014-CA-6, 2014-Ohio-4960, ¶17. While the defendant's victim was receiving counseling, the court found that record did not suggest the victim was unlikely to overcome the effects in a reasonable period of time with the love and support of his family and the knowledge that the defendant had admitted his wrongdoing and had been punished. *Id.* at ¶32.

{¶131} In *Polizzi*, the defendant was a teacher at a Christian high school who had inappropriate relationships with two of his students. *Id.* at ¶2. One relationship took place in 2008, and the other in 2010. Both victims were 17 years old when the conduct began and were 18 years old when the conduct terminated. *Id.* The defendant pleaded guilty to one count of gross sexual imposition and three counts of sexual battery in each of two cases. *Id.* at ¶6. The trial court sentenced him to consecutive, maximum sentences for each offense in both cases, for an aggregate prison term of 33 years. *Id.* at ¶1, 17-18.

{¶132} This court found that other than lack of remorse, there was no support in the record to conclude that the defendant was likely to reoffend based on his lack of criminal history before and for many years after the offenses, the letters of support to his character, and his inability to teach or have interactions with minors under similar circumstances due to his sex offender status. *Id.* at ¶31. We further found that there was little to no support in the record for a finding that the defendant was a danger to the public at large. *Id.* As to the trial court's finding under R.C. 2929.14(C)(4)(b), we found the

record did not support that the victims' harm was "permanent" or that the defendant's conduct "was so great or unusual" in relation to "the same offenses committed by other offenders." *Id.* at ¶35.

{¶133} Here, Mr. Russell has not led an otherwise law-abiding life. He has a history of adjudications and convictions, including an adjudication for rape and gross sexual imposition involving his four- or five-year-old adopted brother for which he spent time in the Department of Youth Services.

{¶134} In addition, Mr. Russell's conduct was particularly egregious. Mr. Russell was an uncle-figure to the victim, and he used his relationship with her aunt to take advantage of her. His conduct involving the victim spanned several years, beginning when she was 10 years old and ending a few months prior to his indictment. After committing the charged offenses, Mr. Russell engaged in sexual conduct with the victim's 16-year-old sister.

{¶135} Further, the record suggests recidivism is likely and that Mr. Russell poses a danger to the public. As indicated, Mr. Russell's behavior suggests a pattern of inappropriate conduct involving children, particularly those in which he has some type of family relationship. In his presentence report, Mr. Russell demonstrated concern with the impact of his offenses on himself but not on the victim. At sentencing, Mr. Russell indicated that he knew his actions were wrong but did them anyway.

{¶136} The record also suggests the harm to the victim in this case was greater. The trial court found that the victim suffered serious psychological harm based on a letter from her psychiatrist setting forth current diagnoses related to a history of sexual trauma.

{¶137} As to the trial court's findings under R.C. 2929.14(C)(4)(b), this court and others have determined that an offender's prolonged sexual relationship with an underage victim under his care in some capacity supports a trial court's finding that the harm caused was so great or unusual that no single prison term adequately reflects the offender's conduct. *See, e.g., State v. Jones*, 8th Dist. Cuyahoga No. 105527, 2017-Ohio-9020, ¶8; *State v. Clyde*, 6th Dist. Erie Nos. E-16-045 & E-16-048, 2017-Ohio-8205, ¶14; *State v. Nierman*, 6th Dist. Ottawa No. OT-15-020, 2017-Ohio-672, ¶18; *State v. Harrington*, 11th Dist. Trumbull No. 2006-T-0122, 2007-Ohio-5784, ¶26; *State v. Taft*, 6th Dist. Huron No. H-18-003, 2019-Ohio-1565, ¶26, *appeal not accepted*, 156 Ohio St.3d 1477, 2019-Ohio-3148.

{¶138} Thus, in contrast to *Overholser* and *Polizzi*, the record amply supports the trial court's finding under R.C. 2929.14(C)(4)(b).

### *R.C. 2929.14(C)(4)(c)*

{¶139} Even if the trial court's finding under R.C. 2929.14(C)(4)(b) was erroneous, any such error would be harmless. The trial court also made a finding under R.C. 2929.14(C)(4)(c) that Mr. Russell's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by him.

{¶140} Notably, R.C. 2929.14(C)(4)(c) does not limit the trial court's review to an offender's history of criminal *convictions*. *State v. Bromagen*, 1st Dist. Hamilton No. C-120148, 2012-Ohio-5757, ¶8 ("If * * * the General Assembly had intended to limit a sentencing court's review of prior actions to criminal *convictions*, it could have done so").

{¶141} Further, while juvenile delinquency proceedings are civil in nature, they necessarily involve a juvenile's commission of conduct that would constitute a criminal

offense if committed by an adult. *Id.* at ¶9; *see* R.C. 2152.02(E)(1) (defining "delinquent child"). Thus, a trial court may rely on an offender's juvenile history of criminal conduct under R.C. 2929.14(C)(4)(c). *Id.*

{¶142} As demonstrated above, the record supports a finding that Mr. Russell's history of sex offenses involving minors presents a risk of recidivism that poses a danger to the public.

{¶143} In sum, Mr. Russell has not established by clear and convincing evidence that the trial court's imposition of consecutive sentences is contrary to law or unsupported by the record.

{¶144} Mr. Russell's second assignment of error is without merit.

{¶145} Based on the foregoing, the judgment of the Lake County Court of Common Pleas is affirmed.

CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.