[Cite as *State v. Wright*, 2020-Ohio-5195.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

STATE OF OHIO,                    :

    Plaintiff-Appellee,          :   CASE NO. 20CA0005

    vs.                          :

BENJAMIN J. WRIGHT,               :   DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.         :

_____

APPEARANCES:

Benjamin J. Wright, Marion, Ohio, pro se.

Anneka P. Collins, Highland County Prosecuting Attorney, and Adam J. King, Highland County Assistant Prosecuting Attorney, Hillsboro, Ohio, for appellee.

_____

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:  10-26-20
ABELE, J.

{¶ 1} This is an appeal from a Highland County Common Pleas Court judgment of conviction and sentence.  Benjamin Wright, defendant below and appellant herein, pleaded guilty to one count of sexual battery and received a thirty-six-month prison sentence.  Appellant assigns two errors for review:

    FIRST ASSIGNMENT OF ERROR:

    "THE TRIAL COURT ERRONEOUSLY USED AN ELEMENT OF
    APPELLANT'S CHARGE TO ELEVATE THE CRIME AND TO
    ELEVATE THE SERIOUSNESS TO IMPOSE A PRISON TERM."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED BY IMPOSING A THIRTY-SIX MONTH PRISON TERM THAT IS CLEARLY AND CONVINCINGLY NOT SUPPORTED BY THE RECORD."

{¶ 2} In September 2018, a Highland County Grand Jury returned an indictment that charged appellant with one count of sexual battery in violation of R.C. 2907.03(A)(5), a third-degree felony. The indictment charged that, from approximately May 2017 through January 2018, appellant engaged in sexual conduct with a child while appellant, a foster parent, was a person in loco parentis and the victim's guardian. On January 25, 2019, appellant pleaded guilty to the charge in the indictment.

{¶ 3} We derive the statement of facts that follows from appellant's March 6, 2019 sentencing hearing. Appellant, a foster parent, specifically requested that his victim, a foster child, be placed in his home. At the hearing, the prosecutor stated:

> The victim * * * was placed on a web page that advises adoptive parents of the availability of a child that's ready to be placed in a forever home.
>
> The victim's sexual orientation was on the web page, and [appellant] actually found him and sought him out, according to the victim's caseworker, * * * and these are her words, 'I couldn't get the victim in his home fast enough for him. He called on a daily basis asking to have the victim placed in his home.' And, the day after school ended for the victim, he was placed in that home, and within a month the sexual assaults began.

Defense counsel related:

> I think I submitted to the PSI [pre-sentence investigation] some thirty (30) pages of letters. I've got about sixty (60) more pages. * * * I've read letters from people that say they'd trust their life with [appellant]; they'd trust their kids with [appellant].
>
> [Appellant] has adopted [C] here, one of his foster kids. He's fostered five (5) other

children throughout his career. [Appellant] has helped other deaf kids in this community as a teacher.]

The trial court stated:

Well, the first thing the Court looks at in any case is what is the offense that is committed. And this is a sexual offense against a child victim.

Now this particular child, he has had a rough life; has a lot of issues of his own; and those are well documented in the files, and I think were well known to the Defendant when he chose to apply to become the foster parent placement for adoption of this victim.

Unfortunately, most of the cases that I see as a Judge, and I've seen in my career of almost 43 years now in this business, child victims are vulnerable. And those who have issues such as this child, are more vulnerable, and are often the objects of people who are seeking victims for this type of conduct.

Now in your case, Mr. Wright, this is the only known victim. According to the report there wasn't just one act, there was at least four (4) separate times that this occurred. And while there is, again, no confirmation or reports of any other victims, my forty-three (43) years of experience and doing lots of classes and educational courses on this subject, having been involved in hundreds, if not thousands of these types of cases, seldom do we have a perpetrator who has only offended against one victim, particularly child victims.

It is very concerning to me that not only was this an act in which you were victimizing a child; but, that you actually sought to have this child come into your home.

And your comments in the PSI to the Probation Officer, uh, while again you're taking responsibility, and saying you understand your responsibility, uh, you almost seem to place some of the blame on this child. - And, again, it was not a forcible type of offense, it was the exploitation of a child with a lot of problems whose decision making has not always been the best in his own life. So, that's what I have to look at. I take a very dim view of any child offense, sexual offense, against a child; and, I don't think there is any reason to treat you any differently (referring to the fact that appellant, who had an interpreter present, is deaf).

{¶ 4} The trial court thereupon ordered appellant to (1) serve thirty-six months in prison with five years of post-release control; and (2) register as a Tier III sex offender. This appeal followed.

I.

{¶ 5} Appellate review of felony sentences generally employ the standard of review set forth in R.C. 2953.08. *State v. Prater*, 4th Dist. Adams No. 18CA1069, 2019-Ohio-2745, at ¶ 12, citing *State v. Graham,* 4th Dist. Adams No. 17CA1046, 2018-Ohio-1277, at ¶ 13. Under R.C. 2953.08(G)(2), "[t]he appellate court's standard of review is not whether the sentencing court abused its discretion." Instead, R.C. 2953.08(G)(2) specifies that an appellate court may increase, reduce, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly finds either:

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

> (b) That the sentence is otherwise contrary to law.

"[C]lear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. Thus, an appellate court may vacate or modify a sentence if the court concludes, by clear and convincing evidence, the record does not support the sentence. *State v. Bowling*, 4th Dist. Jackson No. 19CA2, 2020-Ohio-813, ¶ 6.

{¶ 6} In Ohio, two statutes, R.C. 2929.11 and 2929.12, serve as a general guide for every sentence. *State v. Day*, 2019-Ohio-4816, 149 N.E.3d 122, ¶ 15 (4th Dist.), quoting *State v. Long*, 138 Ohio St.3d 478, 2014-Ohio-849, 8 N.E.3d 890, ¶ 17-18. R.C. 2929.11 sets forth the overriding purposes of felony sentencing:

(A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing.  The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local resources.  To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.

(B) A sentence imposed for a felony shall be reasonably calculated to achieve the three overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders.
(C) A Court that imposes a sentence upon an offender for a felony shall not base the sentence upon the race, ethnic background, gender, or religion of the offender.

R.C. 2929.12 establishes a non-exhaustive list of factors to consider in felony sentencing:

(A) Unless otherwise required by section 2929.13 or 2929.14 of the Revised Code, a court that imposes a sentence under this chapter upon an offender for a felony has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code.  In exercising that discretion, the court shall consider the factors set forth in divisions (B) and (C) of this section relating to the serousness of the conduct, the factors provided in divisions (D) and (E) of this section relating to the likelihood of the offender's recidivism, and the factors set forth in division (F) of this section pertaining to the offender's service in the armed forces of the United States and, in addition, may consider any other factors that are relevant to achieving those purposes and principles of sentencing.

(B) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense:

* * *

(6) The offender's relationship with the victim facilitated the offense.

* * *

(8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.

{¶ 7} This court has held that, generally, a sentence is not contrary to law if a trial court considered the R.C. 2929.11 purposes and principles of sentencing, the R.C. 2929.12 seriousness and recidivism factors, properly applied post-release control, and imposed a sentence within the statutory range. *State v. Prater, supra,* at ¶ 20; *State v. Graham, supra,* at ¶ 16; *State v. Perry*, 4th Dist. Pike No. 16CA863, 2017-Ohio-69, ¶ 21; *State v. Brewer*, 2014-Ohio-1903, 11 N.E.3d 317, ¶ 38 (4th Dist.); *State v. Bowling*, *supra,* at ¶ 7.

II.

{¶ 8} In his first assignment of error, appellant asserts that the trial court erroneously used an element of appellant's offense to elevate the seriousness of the crime. In particular, appellant argues that the trial court made two findings: (1) the offender's relationship with the victim facilitated the offense under R.C. 2929.12(B), and (2) in committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation or religion under R.C. 2929.12(B). Thus, appellant contends that his specific charge already accounted for his relationship with the victim, and, therefore, his conduct was not more serious than conduct that typically constituted the offense.

{¶ 9} In the case sub judice, appellant pleaded guilty to sexual battery in violation of R.C. 2907.03(A)(5), which provides "(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply: * * * (5) The offender is the other person's natural or adoptive parent, or a stepparent, or guardian, or person in loco parentis of the other person." In its sentencing entry, the trial court addressed R.C. 2929.12(B)'s seriousness factors and made certain findings, including that appellant's relationship with the victim facilitated the offense.

{¶ 10} This court has previously recognized that a trial court "may not elevate the seriousness

of an offense by pointing to a fact that is also an element of the offense itself." *State v. Sims*, 4th Dist. Gallia No. 10CA17, 2012-Ohio-238, ¶ 16, quoting *State v. Davis*, 4th Dist. Washington No. 09CA28, 2010-Ohio-555, ¶ 24, citing *State v. Schlecht*, 2d Dist. Champaign No. 2003-CA-3, 2003-Ohio-5336, ¶ 52.   In *Sims,* the trial court cited an element of Sims' offense (using a knife) to justify its finding that Sims' conduct was more serious than conduct normally constituting aggravated robbery.   We vacated the sentence and concluded that "[u]nder the trial court's reasoning, the seriousness of every aggravated robbery offense would automatically be elevated for sentencing purposes.   Consequently, because the trial court based its justification on an element of the offense, the court abused its discretion when it found Sims' offense to be more serious for sentencing purposes." *Sims*, *supra*, at ¶ 19.

{¶ 11} In *Davis*, *supra*, the defendant's domestic violence conviction required the state to prove that the defendant knowingly caused or attempted to cause physical harm to "a family or household member." *Davis* at ¶ 24, citing R.C. 2919.25(A).   At sentencing, the trial court found the offense more serious for sentencing purposes because the defendant's relationship with the victim, his wife and mother of his children, facilitated the offense. *Id.* at ¶ 25.   This court determined that the victim did not "[have] any relationship beyond that required for his domestic violence convictions, i.e., [the victim] was [the defendant's] wife/mother of his children and lived with him." *Id.*   We held that "[e]ven though [a trial court] has discretion in choosing an appropriate sentence, when a court considers an improper sentencing factor, it has committed an abuse of discretion." *Id.; State v. Lucas*, 4th Dist. Washington No. 09CA21, 2010-Ohio-2575, ¶ 21 ("As was the case in *Davis,* here there is no evidence that Lucas had any relationship with [the victim] beyond that which was necessary for a domestic violence conviction - that is, she was his wife and they

resided or had resided with each other."). *See also Schlecht* at ¶ 52 ("Because a sale or offer to sell is part of the elements of the charged offense, the same conduct cannot also be an aggravating circumstance justifying a greater than minimum sentence."); *State v. Stroud*, 7th Dist. Mahoning No. 07 MA 91, 2008-Ohio-3187, ¶ 52 ("the trial court found that Stroud committed the worst form of the offense, in part, because 'a life was taken' and did not explain how this was something more than an element of the offense.   This fact is present in every case where a court is sentencing an offender for a voluntary manslaughter and highlighting this fact does not show why this particular case is a more serious form of that offense."); *State v. Smith*, 8th Dist. No. 85245, 2005-Ohio-3836, ¶ 17-18 ("the trial court's sentence * * * was improper" because "the trial court used the elements of the offense itself to enhance the penalty.").

{¶ 12} In *State v. Polizzi*, 11th Dist. Lake Nos. 2018-L-063, 2018-L-064, 2019-Ohio-2505, the defendant pleaded guilty to two counts of gross sexual imposition and six counts of sexual battery.  *Id.* at ¶ 6.   The defendant was a teacher to the victims, a necessary element of his convictions under R.C. 2907.03(A)(7).   *Id.* at ¶ 28.   The Eleventh District concluded that the relationship between the offender and victim had been "accounted for by the legislature when it established most of these offenses [R.C. 2907.03] as felonies of the third degree."  *Id.*   The court determined that the defendant's "sentences for sexual battery should not be elevated based on his status as a teacher to the victims."  *Id.*

{¶ 13} Subsequently, the Eleventh District limited the *Polizzi* holding to consecutive sentencing findings.   The court declined to apply *Polizzi* to the argument made here - that the record does not support the trial court's R.C. 2929.12 seriousness findings.   *See State v. Banas*, 11th Dist. Lake No. 2019-L-049, 2019-Ohio-5053, ¶ 25 ("The holding in *Polizzi* was that the trial court's

consecutive sentence findings under R.C. 2929.14(C)(4) were clearly and convincingly not supported by the record. We decline to apply that holding to appellant's argument here that the trial court's seriousness findings under R.C. 2929.12 are not supported by the record."); *State v. Anthony*, 11th Dist. Lake No. 2019-L-045, 151 N.E.3d 13, 2019-Ohio-5410, ¶ 92; *State v. Rutherford,* 11th Dist. Lake No. 2020-L-033, 2020-Ohio-3934, ¶ 9.

{¶ 14} The Eleventh District also noted that "[c]ourts have limited the 'elements of the offense' case law to situations where the *only* factor supporting a maximum sentence is a factor that is also an element of the offense." *State v. Russell*, 11th Dist. Lake No. 2019-L-138, 2020-Ohio-3243, ¶ 94, citing *State v. Hardin-Moore*, 2d Dist. Montgomery No. 24237, 2011-Ohio-4666, ¶ 22. Moreover, the application of R.C. 2929.12(B)(6) requires that the offender's relationship to the victim make the commission of the offense easier, where R.C. 2907.03(A)(5) only requires the existence of the parental role and does not address how that role facilitated the offense. *Russell*, *supra,* at ¶ 92. Therefore, the court concluded that the trial court's determination under R.C. 2929.12(B)(6) extended beyond the "in loco parentis" element of sexual battery under R.C. 2907.03(A)(5). *Id.*

{¶ 15} In the case sub judice, we believe that the trial court's R.C. 2929.12(B)(6) determination extended beyond the R.C. 2907.03(A)(5) sexual battery element. Here, the court did not simply consider appellant's foster parent status as a seriousness factor. Rather, the record shows the trial court's concern that appellant knew of the victim's sexual orientation and urgently sought him out. At sentencing, appellee relayed the caseworker's statements: "I couldn't get the victim in his [appellant's] home fast enough for him. He called on a daily basis asking to have the victim placed in his home." These facts indicate more than appellant's status as a foster parent, an element

of sexual battery under R.C. 2907.03(A)(5). Instead, these facts indicate appellant's premeditation to use his foster parent role as a tool to facilitate the offense. Thus, we conclude that the trial court did not use an element of appellant's offense to elevate the seriousness of appellant's offense at sentencing, and the record supports the trial court's finding that appellant's relationship with the victim facilitated the offense under R.C. 2929.12(B)(6).

{¶ 16} Accordingly, based on the foregoing reasons, we overrule appellant's first assignment of error.

III.

{¶ 17} In his second assignment of error, appellant asserts that the trial court erred by imposing a thirty-six-month prison term.

{¶ 18} To determine whether a sentence is contrary to law, "[t]he only specific guidelines is that the sentence must be within the statutory range[.]" *State v. Sims*, *supra,* at ¶ 11, quoting *State v. Welch*, 4th Dist. Washington No. 08CA29, 2009-Ohio-2655, ¶ 7, quoting *State v. Ross,* 4th Dist. Adams No. 08CA872, 2009-Ohio-877, ¶ 10. Here, appellant does not argue that the trial court failed to sentence him to a term within the permissible range, a range of twelve to sixty months. R.C. 2929.14(A)(3)(a). Thus, because appellant's prison term is within the permissible range, we must consider whether the sentence is clearly and convincingly not supported by the record. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 23.

{¶ 19} As stated above, courts must consider the general guidance factors outlined in R.C. 2929.11 and 2929.12; *Sims, supra* at ¶ 12; *Davis*, at ¶ 33. R.C. 2929.11 and R.C. 2929.12 require a trial court to "consider" certain statutory factors in imposing a felony sentence. This instruction within R.C. 2929.11 and R.C. 2929.12 is distinct from an instruction to "determine on the record" or

to "find" the existence of specific statutory criteria before imposing a sentence.  *State v. Seaman*, 7th Dist. Mahoning No. 18 MA 0103, 2019-Ohio-2709, ¶ 20, comparing R.C. 2929.13(E)(3) (community control violation solely due to positive drug test); R.C. 2929.14(C)(4)(consecutive sentencing).  Further, even in the case of a completely silent record (where there is no mention of R.C. 2929.11 purposes and principles of sentencing or R.C. 2929.12 seriousness or recidivism factors in the judgment entry or at the hearing), we do not presume the court failed to consider these items.  *Seaman, id.*

{¶ 20} Here, the trial court did not state at the hearing that it had considered R.C. 2929.11 or R.C. 2929.12.  However, the court's sentencing entry did indicate that the trial court considered R.C. 2929.11 and R.C. 2929.12.  *See State v. Lancaster*, 12th Dist. Butler No. CA 2007-03-075, 2008-Ohio-1665, ¶ 4; *State v. Todd*, 10th Dist. Franklin No. 06AP-1208, 2007-Ohio-4307,  ¶ 15-16 (trial court's entry states that the court considered R.C. 2929.11 and R.C. 2929.12 and this language in a sentencing entry is sufficient by itself to overcome a defendant's claim that the trial court did not consider the two statutes).  In the case at bar, we again point out that the trial court included this language in the sentencing entry.   Thus, we conclude that the trial court appropriately considered the R.C. 2929.11 principles and 2929.12 factors.

{¶ 21} Appellant further argues that the record does not support the trial court's R.C. 2929.12(B)(8) finding that appellant was motivated by prejudice based on sexual orientation in committing the offense.  In particular, appellant cites *State v. Brown*, 11th Dist. Lake No. 2014-L-075, 2015-Ohio-2897, in which Brown pleaded guilty to kidnapping and two counts of felonious assault.  The trial court found Brown's offenses were motivated by prejudice based on gender under R.C. 2929.12(B)(8).  *Id.* at ¶ 37.  Appellant cites to a concurrence in *Brown* that

stated, "[t]his writer does not feel that the crimes committed by appellant qualify as a hate crime or a gender-based crime. The victim was not selected by appellant due to her gender. She was 'selected' as a function of unfortunately being involved in a relationship with appellant. As such there is insufficient evidence in the record to find that appellant was motivated by gender-bias." *Id.* at ¶ 51. First, we point out that *Brown* did conclude that the record supported the R.C. 2929.12(B)(8) finding. Second, the facts here reveal that appellant selected the victim due to his gender. Therefore, we believe that the record supports the court's R.C. 2929.12(B)(8) finding.

{¶ 22} As appellee points out, the trial court's sentencing entry in the case at bar states, "[t]he Court has considered the record, oral statements, any victim impact statements, and pre-sentence report if ordered, as well as all factors required by Section 2929.12 ORC." Further, the entry states, "[a]fter weighing all of the these factors and the purposes and principles of Section 2929.11 ORC, the Court finds the offender is not amenable to available community sanctions and that a prison term is appropriate."

{¶ 23} Our review of the record in the case sub judice reveals that the trial court explained the basis for imposing a term of incarceration, and properly considered the R.C. 2929.11 purposes and principles of felony sentencing and the R.C. 2929.12 factors. Therefore, we conclude that the trial court's sentence is not clearly and convincingly contrary to law.

{¶ 24} Accordingly, based on the foregoing reasons, we overrule appellant's second assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Hess, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.